**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**


ERIC ROBINSON,              )
                             )
           Plaintiff,      )       Civil Action No. 09-247
                             )
      v.                  )       Judge Cathy Bissoon
                             )
RAYMOND J. SOBINA, *et al.*,      )
                             )
           Defendants.    )


**<u>MEMORANDUM OPINION</u>**

For the reasons that follow, Defendants' motion for summary judgment (Doc. 54) will be

granted in part and denied in part, and Plaintiff's motion for summary judgment (Doc. 59) will

be denied.


I.     **<u>Procedural History</u>**

Eric Robinson ("Plaintiff") is a state inmate currently incarcerated at the State

Correctional Institution at Huntingdon, Pennsylvania ("SCI-Huntingdon").  Plaintiff brings this

suit pursuant to the Civil Rights Act of 1871, 42 U.S.C § 1983, *et seq*.  This suit was commenced

with the receipt of the initial complaint by this Court, as an attachment to Plaintiff's motion for

leave to proceed *in forma pauperis* ("IFP") on February 26, 2009.  (Doc. 1).  Plaintiff was

granted leave to proceed IFP, and the complaint was filed, on the following day.  (Docs. 2 and

3).  Plaintiff's initial complaint named a host of individuals as Defendants, many of whom were

dismissed on Plaintiff's motion, or due to his failure to prosecute.  <u>See</u> Order of

September 30, 2009; <u>see also</u> (Docs. 13 and 19).  Claims against various other Defendants were

dismissed as a result of Defendants' partial motion to dismiss.  (Docs. 32 and 37).  As of the date

of this order, only Plaintiff's claims against Defendants Sobina, Story, Steel, and Burkhart ("Defendants") remain.

On April 28, 2011, Defendants filed a motion for summary judgment.  (Doc. 54). Plaintiff responded with his own motion for summary judgment.  (Docs. 59-62).  These motions are ripe for disposition.


## II.   <u>Facts</u>

The following is a recitation of the facts and allegations relevant to Plaintiff's remaining claims.

Plaintiff alleges that, while he was confined to the restricted housing unit ("RHU") at the State Correctional Institution at Forest ("SCI-Forest") for the period of one day, his television set, which previously had been determined to be operational, was broken.  Compl. (Doc. 3 ¶¶ 1-6); Def.s' Concise Statement of Material Facts (Doc. 55 at ¶ 5).  Plaintiff alleges that, as he gathered his personal property upon release from the RHU, his request to have the television tested was denied by Defendant Steel, which is further alleged to be in violation of Department of Corrections ("DOC") policy.  (Doc. 3 ¶ 4).

Plaintiff next alleges that, on February 27, 2007, he was placed in a so-called "hard cell" by Defendant Burkhart as a result of an altercation with corrections officers.  <u>Id.</u> at ¶¶ 19-24. During his stay in the hard cell, Plaintiff allegedly was "deprived of all basic human necessities[,]" such as running hot and cold water, linens, blankets, pillows, towels, washcloths, shoes, soap, a prison jump suit, toilet tissue, socks, a tooth brush, and tooth paste.  <u>Id.</u> ¶ 25.  He further alleges that he was forced to live under "freezing cold temperatures on a dirty and filthy mattress stained with dried up feces, blood and urine with holes[,]" he was denied periods of

outdoor exercise, he was not allowed to possess writing implements, and he was not allowed

contact with family or the courts.  Id. ¶¶ 25-26.  Plaintiff also alleges that he was denied meal

trays for five days during his confinement to the hard cell.  Id. ¶ 25.  On March 9, 2007,

Defendant Sobina and another individual allegedly visited Plaintiff while making rounds in the

RHU.  Id. ¶ 41.  As a result of this, RHU staff allegedly were ordered to provide Plaintiff with

"all the basic issued human necessities."  Id.  Plaintiff claims that the conditions of confinement

in the hard cell violated his rights under the Eighth Amendment.  Id. at 39.

Plaintiff allegedly remained in the hard cell until March 9, 2007.  Id. ¶ 44.  During the

period of time that he was confined to the hard cell, he allegedly attempted to inform supervisory

staff of the conditions of his confinement.  On February 29, 2007,[1] he allegedly asked an

unnamed nurse to file an abuse report concerning the conditions of his cell and his alleged denial

of meals by prison staff.  Id. ¶ 32.  The same day, Plaintiff allegedly asked Defendant Burkhart

why he was "being deprived of food and forced to live under inhumane and unsanitary

conditions[,]" to which Defendant Burkhart allegedly replied, "'Why did you file those

complaints against staff members?'"  Id. ¶ 33.  He allegedly asked the same question of

Defendants Story and Steel the following day, to which Defendant Story allegedly replied, "'Per

Orders of Superintendent Sobina[.]'"  Id. ¶ 34.  Plaintiff also alleges that other inmates attempted

to contact members of the Pennsylvania legislature, and filed grievances and request slips on his

behalf.  Id. ¶¶ 35-36.

---

[1] The undersigned notes that the month of February consisted of only 28 days in 2007.

Plaintiff generally alleges, without elaboration, that Defendant Sobina, as well as former Defendant Mongelluzzo, conspired to violate his civil rights by transferring him to SCI-Fayette, where he was placed in an allegedly unsanitary hard cell.  Id. at 18, 40.

In his affidavit in support of summary judgment, Plaintiff generally echoes his allegations regarding his Eighth Amendment claims.  See (Doc. 60).  Specifically, Plaintiff avers that he was housed under "inhumane and cruel living conditions and deprived of 'meals' for a consecutive nine(9) [sic] days from February 27, 2007 to March 9, 2007[,]" and that his confinement during this period of time was under the supervision of Defendants Story, Burkhart, and Steel.  Id. ¶ 6. Plaintiff avers to having asked Defendant Burkhart on February 29, 2009, why he was being deprived of meals "and housed under unconstitutional living conditions."  Id. ¶ 7.  Plaintiff further avers to asking Defendant Story the following day why he was being deprived of meals, "showers and running 'hot' and 'cold' water being [sic] forced to live under inhumane and creul [sic] living conditions[.]"  Id. ¶ 9.  Defendant Story responded ""Per Orders" [sic] of [Defendant] Superintendent Sobina.'"  Id.  Finally, Plaintiff avers that, on March 9, 2007, Defendant Sobina saw the conditions of his confinement, and his subordinate ordered that the RHU staff provide Plaintiff with "all the basi[c] necessities."  Id. ¶ 10.  Plaintiff's affidavit contains no mention of Defendant Steel's involvement in the alleged damaging of Plaintiff's television and placing him in a hard cell, nor does it elaborate on his allegations of conspiracy against Defendant Sobina.

Plaintiff also adduces the unsworn declarations of two inmates – Champ Smith and Gary Williams.  Smith indicates that he observed Defendant Burkhart order his subordinates not to provide Plaintiff with meals, nor provide him with "basic issue human necessities," from "February 27, 2006 and March 9, 2006 [sic] [.]"  (Doc. 62-2 at 1).  Smith also states that, as an

inmate worker, he refused to clean the "blood, feces and urination [sic]" that was spattered about Plaintiff's cell.  Id.  He formulaically states that this pattern and practice was implemented and condoned by shift commanders and corrections lieutenants during the period of time in question. Id.  Williams's declaration echoes that of Smith, and adds allegations that Plaintiff was denied a blanket despite allegedly low temperatures in his cell, but does not mention any Defendant by name.  (Doc. 62-3).

The record indicates that the sole administrative grievance filed and fully exhausted by Plaintiff regarding the alleged conditions of his confinement in the strip cell, and contemporaneous denial of food, was grievance number 181408, which was submitted on March 9, 2007.  (Doc. 55 ¶ 10); (Doc. 3 ¶¶ 43-44); (Doc. 54-3 at 7).  This grievance was denied at the initial level on March 22, 2007.  (Doc. 54-3 at 5).  Plaintiff appealed, and added that he was not issued basic necessities until after Defendant Sobina had seen his living conditions first hand on March 8, 2009.[2]  Id. at 4.  This appeal was denied by Defendant Sobina.  Id. at 3. Plaintiff filed a second level appeal, which was denied by the DOC's chief grievance officer.  Id. at 2.  The decision of the chief grievance officer indicates that it was her finding that (1) Plaintiff had not provided evidence to support his claims of poor living conditions and, to the extent that he complained of the unsanitary conditions of his cell, it was his responsibility to clean it; (2) Plaintiff had been provided standard state-issue "care/hygiene" necessities, and had been afforded ample opportunities to shower; and (3) Plaintiff's meals and access to other activities "were appropriately denied" due to "legitimate security concerns" and due to Plaintiff's failure to

_____

[2] As stated above, the allegations in the complaint indicate that Defendant Sobina did not view the alleged conditions of Plaintiff's cell until March 9, 2007.  See (Doc. 3 ¶ 41).

follow procedures, such as unnamed "feeding aperture procedures for receipt of meals[.]"  Id. at 2.

### III.   Analysis

In their motion for summary judgment,[3] Defendants make the following arguments: (1) Plaintiff has failed to allege sufficient personal involvement on the parts of Defendants Sobina, Story, and Burkhart to state a claim upon which relief may be granted; (2) even if a claim had been stated with respect to Plaintiff's conditions of confinement, summary judgment for Defendants is appropriate; (3) Plaintiff has failed to state a cognizable claim for civil conspiracy; and (4) Plaintiff has failed to state a cognizable claim under section 1983 against Defendant Steel.  (Doc. 56 at 4, 7, 9, 11-12).  These will be addressed *seriatim*.

### A.  Personal Involvement

It is well established that no liability exists under section 1983 solely based on a theory of vicarious liability or *respondeat superior*.  Shaw v. Stackhouse, 920 F.2d 1135, 1147 (3d Cir. 1990).  Instead, in order for section 1983 liability to attach, a plaintiff must show that a defendant was personally involved in the deprivation of his or her federal rights.  See Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005).  In cases involving a supervisory or reviewing defendant, personal involvement may be shown through "'allegations of personal direction or of actual knowledge and acquiescence.'"  Id. at 353 (quoting Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988)).

---

[3] Despite Defendants' characterization of the instant motion as one for summary judgment, several of their arguments clearly are for dismissal.  See, e.g., (Doc. 54 ¶ 2); see also (Doc 56 at 7).  Accordingly, this Court will review those arguments under the 12(b)(6) standard.

In situations where a supervising official knowingly permits a continuing custom or policy that results in harm to a plaintiff, section 1983 liability may attach.  See Colburn v. Upper Darby Twp., 838 F.2d 663, 673 (3d Cir. 1988) (overruled in part on other grounds by Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 168 (1993)).  At a minimum, liability for such a claim is appropriate "'only where there are both (1) contemporaneous knowledge of the offending incident or knowledge of a prior pattern of similar incidents, and (2) circumstances under which the supervisor's inaction could be found to have communicated a message of approval to the offending subordinate.'"  Colburn, 838 F.2d at 673 (quoting Chinchello v. Fenton, 805 F.2d 126, 133 (3d Cir. 1986)).

The denial of a grievance or mere concurrence in an administrative appeal process is insufficient to establish personal involvement.  See, e.g., Jefferson v. Wolfe, No. 04-44, 2006 WL 1947721, at *17 (W.D. Pa. July 11, 2006) (citing Watkins v. Horn, No. CIV.A. 96-4129, 1997 WL 566080, at *4 (E.D. Pa. Sept. 5, 1997)); see also Pressley v. Beard, 255 F. App'x 216, 218 (3d Cir. 2008) (affirming the dismissal of supervisory officials who merely failed to take corrective actions when grievances or investigations were referred to them); Cf. Antonelli v. Sheahan, 81 F.3d 1422, 1430 (7th Cir. 1996) (holding that a state's inmate grievance procedure did not give rise to a liberty interest protected by the Due Process Clause).

Plaintiff's allegations against Defendant Sobina clearly are based on a theory of supervisory liability, and do no more than raise the plausible inference that Defendant Sobina ordered Plaintiff confined to a hard cell for a brief period of time after he was involved in a physical altercation with corrections officers.  There is no indication, either in Plaintiff's complaint, or in the evidence on the record, that Defendant Sobina participated in the alleged damaging of Plaintiff's television, or was at all aware of the alleged conditions of Plaintiff's

confinement until March 9, 2009, the date on which Plaintiff was removed from said conditions. There also is no indication in the allegations in the complaint, or anywhere else in the record, that Defendant Sobina ever was personally aware of Plaintiff's alleged denial of food.  Even taking Plaintiff's allegations as true, the only information that Defendant Sobina received prior to March 9, 2007, regarding Plaintiff's alleged plight came from inmate requests and grievances. As stated above, these are insufficient to impute personal involvement in an alleged constitutional violation by a supervisory defendant.  As a result, Plaintiff has failed to state a claim against Defendant Sobina under section 1983, and the claims against him will be dismissed.  Additionally, as it is clear that it would be both inequitable and futile to grant leave to amend, dismissal will be with prejudice with respect to this Defendant.  See Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004).

The same cannot be said for Defendants Burkhart, Story, and Steel.  Despite the fact that they, like Defendant Sobina, are supervisory Defendants, Plaintiff alleges that he informed them all, verbally, that he was being denied food and experiencing allegedly unconstitutional conditions of confinement, and that he did so contemporaneously with these alleged deprivations.  Plaintiff further alleges in his complaint that Defendant Steel personally was involved in the failure to test his television set.  This is adequate to allege personal involvement of these individuals and, as such, this argument does not dispose of Plaintiff's claims against Defendants Burkhart, Story, and Steel.

### B.  Eighth Amendment Conditions of Confinement

The Eight Amendment's prohibition of cruel and unusual punishment forbids prison officials from subjecting prisoners to inhumane conditions of confinement.  Farmer v. Brennan,

511 U.S. 825, 832 (1994).  "[P]rison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates[.]'"  Id. (quoting Hudson v. Palmer, 468 U.S. 517, 526-27 (1984)).

In order to succeed in an Eighth Amendment conditions of confinement claim, Plaintiff must demonstrate both that he has been denied "the minimal civilized measure of life's necessities" and that this was done while Defendants had a "sufficiently culpable state of mind." Farmer, 511 U.S. at 834.  With respect to the first requirement, conditions cited by an inmate must be "objectively, sufficiently serious [and] must result in the denial of the minimal civilized measure of life's necessities."  Id. at 834 (internal citation and quotation omitted).  Only "extreme deprivations" are sufficient to make out a conditions of confinement claim.  Hudson v. McMillen, 503 U.S. 1, 8-9 (1992).  A plaintiff must prove that the deprivation is sufficiently serious when viewed within the context of "contemporary standards of decency."  Helling v. McKinney, 509 U.S. 25, 36 (1993).  Although a combination of confinement conditions – considered alone constitutionally insufficient – may present an Eighth Amendment violation, they nevertheless must cumulatively produce "the deprivation of a single, identifiable human need such as food, warmth, or exercise . . . ."  See Wilson v. Seiter, 501 U.S. 294, 304 (1991).  In applying this test, the Court acknowledges that "[t]he Constitution . . . does not mandate comfortable prisons."  Wilson, 501 U.S. at 298.  "In considering whether a prisoner has been deprived of his rights, courts may consider the length of time that the prisoner must go without those benefits."  Hoptowit v. Ray, 682 F.2d 1237, 1258 (9th Cir.1982) (citing Hutto v. Finney, 437 U.S. 678, 685 (1978)).

With respect to the second element, an inmate must demonstrate deliberate indifference to prison conditions on the part of prison officials.  Farmer, 511 U.S. at 833; Wilson, 501 U.S. at

297; Rhodes v. Chapman, 452 U.S. 337, 347 (1981).  This requires a court to determine,

subjectively, whether the officials acted with a sufficiently culpable state of mind.  Id.

> [A] prison official cannot be found liable under the Eighth
> Amendment for denying an inmate humane conditions of
> confinement unless the official knows of and disregards an
> excessive risk to inmate health or safety; the official must both be
> aware of facts from which the inference could be drawn that a
> substantial risk of serious harm exists, and he must also draw the
> inference. . . .  The Eighth Amendment does not outlaw cruel and
> unusual "conditions"; it outlaws cruel and unusual "punishments."

Farmer, 511 U.S. at 838.  Thus, a prison official may be held liable under the Eighth Amendment

for denying humane conditions of confinement only if he knows that inmates face a substantial

risk of serious harm and disregards that risk by failing to take reasonable measures to abate it.  A

trier of fact may infer the existence of this subjective state of mind from the fact that the risk of

harm is obvious.  Id. at 842.

    With this standard in mind, this Court now turns to Plaintiff's claims that he suffered

violations of his rights under the Eighth Amendment.  It is easiest to address these claims if they

are divided into four categories: (1) the alleged denial of "basic issue" items, contact with the

courts and family members, and periods of outdoor exercise; (2) the alleged denial of a blanket

in light of allegedly low temperatures in his cell; (3) his cell's allegedly unsanitary conditions;

and (4) the alleged denial of food for five days.

### 1.   "Basic Issue" Items and Periods of Exercise

    Defendants argue that Plaintiff's mere placement in a hard cell for a period of nine days,

along with the denial of the supplies and outside communication listed above, is not sufficient to

rise to a violation of the Eighth Amendment.  With respect to Plaintiff's allegations that he was

denied as running water, linens, pillows, towels, washcloths, shoes, soap, a prison jump suit,

toilet tissue, socks, a tooth brush, tooth paste, writing implements, that he was issued a mattress

that contained holes during this period of time, and that he was not allowed to communicate with

family members or the courts (Doc 3 ¶ 25), this Court agrees.  Assuming *arguendo* that Plaintiff

could demonstrate at trial that he was denied these things while he was confined to a hard cell, he

cannot, as a matter of law, demonstrate that these brief deprivations – even in the aggregate –

resulted in the denial of the minimal civilized measure of life's necessities.  See, e.g., Shaeffer v.

Schamp, No. 06-1656, 2008 WL 2553474, at *6 (W.D. Pa. June 25, 2008) (Schwab, J.) (in which

this Court found that a plaintiff's confinement in a hard cell "for ten days without a mattress,

soap, toilet paper, running water, [or] legal supplies," did not constitute cruel and unusual

punishment).  The same is true for Plaintiff's allegations that he was denied periods of outdoor

exercise.  See Barkley v. Ricci, No. 11-1712, 2011 WL 2938122, at *2 (3d Cir. July 22, 2011)

(citing with approval Knight v. Armontrout, 878 F.2d 1093, 1996 (8th Cir. 1989) (holding that

the denial of outdoor recreation for 13 days was not cruel and unusual punishment)).

## 2.   Lack of Blanket and Cold Temperatures

Plaintiff also alleges that, during his nine-day period of confinement to the hard cell, he

was exposed to "freezing cold temperatures" and denied a blanket.  (Doc. 3 ¶ 25).  This is the

archtypical example given by the Supreme Court when describing how a combination of factors,

which individually are insufficient to deprive an individual of a single, identifiable human need,

can rise to the level of a violation of the Eighth Amendment.  See Wilson, 501 U.S. at 304.  The

evidence adduced by Plaintiff with respect to this claim is his bare assertion of the same in his

initial filing of grievance number 181408.   (Doc. 54-3 at 7).  This alleged condition of his

confinement also appears in Williams's declaration (Doc. 62-3 at 1), but is notably absent from Plaintiff's own affidavit.   (Doc. 60).

Assuming, *arguendo*, that Plaintiff has adduced sufficient evidence that he was denied single human need with respect to this issue – thus satisfying the objective prong of the above test – Plaintiff has failed to adduce any evidence that Defendants had any knowledge of the allegedly low temperature of his cell, or his lack of blanket.  Plaintiff alleges in the complaint that he informed Defendants Story, Steel, and Burkhart, quite generally, that he was housed in "inhumane and unsanitary conditions."  (Doc. 3 ¶¶ 33-34).  His averments in his affidavit indicate that he informed them[4] that he was housed in "unconstitutional[,]" "inhumane" and cruel conditions.  (Doc. 60 ¶¶ 8-9).  Williams's declaration makes no mention that any Defendant was informed specifically of the cell's allegedly low temperature or Plaintiff's lack of blanket. Without adducing evidence that would allow a reasonable trier of fact to conclude that Defendants had actual knowledge of the deprivation that he was suffering, Plaintiff cannot meet the subjective prong of the Eighth Amendment test, nor can he meet his burden under Celotex to survive summary judgment on these claims.  See Celotex Corp. v. Catrett, 477 U.S. 317 (1986) (summary judgment may be granted against a party who fails to adduce facts sufficient to establish the existence of any element essential to that party's case and for which that party will bear the burden of proof at trial).  As such, Defendants will be granted summary judgment insofar as Plaintiff claims that he was exposed to low temperatures and denied a blanket.

---

[4] Defendant Steel conspicuously is absent from Plaintiff's affidavit.  See generally (Doc. 60)

3.   <u>Unsanitary Cell Conditions</u>

The reasoning from Part III.B.2, <u>supra</u>, is equally applicable to Plaintiff's claims that he was housed in unconstitutionally unsanitary conditions.  There is no evidence on the record indicating that Plaintiff ever informed Defendants that his cell allegedly was contaminated by blood and excrement.  Instead, except for the alleged denial of food and "basic issue" items, Plaintiff merely avers that he informed Defendants Burkhart and Story that his cell conditions were inhumane, cruel, and unconstitutional.  (Doc. 60 ¶¶ 8-9).  Neither Williams's nor Smith's declarations indicate that Defendants had been informed of, or otherwise possessed any knowledge with respect to, the alleged filthy conditions of Plaintiff's cell prior to March 9, 2007. (Docs. 62-2 and 62-3).

Even Williams' statement that, on March 5, 2007, he filed a grievance, addressed to the facility grievance coordinator, and a request slip, addressed to a non-party to this suit, contains no support for the conclusion that any of the Defendants were forwarded these documents, or were in any way informed of the alleged conditions of Plaintiff's cell prior to March 9, 2007. Furthermore, if they had been given these documents prior to that date, mere receipt and denial of a prison grievance is not sufficient to impute liability on these supervisory Defendants.  <u>See</u> Part III.A, <u>supra</u>.  Thus, Plaintiff has failed to meet his <u>Celotex</u> burden with respect to the subjective prong of this Eighth Amendment claim, and summary judgment will be granted in favor of Defendants.

4.   <u>Denial of Food</u>

Next, Plaintiff alleges and avers that he was denied meals for five days during his confinement to the hard cell. "The deprivation of food constitutes cruel and unusual punishment

only if it denies a prisoner the 'minimal civilized measure of life's necessities.'" <u>Talib v. Gilley</u>, 138 F.3d 211, 214 n.3 (5th Cir. 1998) (quoting <u>Wilson</u>, which quoted <u>Rhodes</u>). "Whether the deprivation of food falls below this threshold depends on the amount and duration of the deprivation." <u>Id.</u>  However, it is difficult to conceive of a situation in which the denial of food for five days would not rise to this standard.  Additionally, in an apparent concession to the veracity of Plaintiff's allegations, Defendants respond that any denial of food was due to Plaintiff's failure to comply with undisclosed procedures involving the feeding aperture in his door at meal times.  <u>See</u> (Doc. 56 at 8-9).  Plaintiff also alleges and avers that he explicitly informed Defendants Story and Burkhart that he was not receiving meals in late February and early March of 2007.[5]  (Doc. 3 ¶¶ 33-34); <u>see also</u> (Doc. 60 ¶¶ 8-9).

Based on the evidence on the record, it is clear that Plaintiff has met his <u>Celotex</u> burden with respect to this claim against Defendants Story and Burkhart.  Defendants' response that denying Plaintiff food for five days somehow was justified by Plaintiff's actions, at best, creates a triable issue of whether Defendants Story and Burkhart actually possessed the culpable state of mind necessary for Eighth Amendment liability to attach.[6]  Accordingly, summary judgment on this claim will be denied with respect to Defendants Story and Burkhart.  However, as no

---

[5] There is no evidence that Defendant Sobina was made aware of the denial of Plaintiff's meals until March 9, 2007, when Plaintiff's confinement in the hard cell apparently was ended. Additionally, while Defendant Steel is alleged in the complaint to have been made aware of Plaintiff's alleged lack of food, Plaintiff has not adduced any evidence that this was the case.

[6] "[P]rison officials who act reasonably cannot be found liable under the Cruel and Unusual Punishments Clause." <u>Farmer v. Brennan</u>, 511 U.S. 825, 845 (1994).  However, Defendants do not adduce conclusive evidence that it was reasonable to deny Plaintiff five days' worth of food for his alleged deviation from some ill-defined feeding procedure.  The record simply is insufficiently developed to demonstrate that either party is entitled to summary judgment with respect to this issue.

evidence was adduced of Defendant Steel's knowledge of Plaintiff's alleged denial of food,

summary judgment will be granted in his favor on this claim.

## C. **Civil Conspiracy**

Plaintiff attempts to state a claim against Defendant Sobina for civil conspiracy to

transfer him to SCI-Fayette, where he allegedly was housed in another hard cell, and held in

unconstitutional conditions of confinement.  (Doc. 3 at 40); see also (Doc. 3 ¶ 58).

### 1.   Civil Conspiracy Generally

In order to set forth a cognizable conspiracy claim, a plaintiff cannot rely on broad or

conclusory allegations.  D.R. by L.R. v. Middle Bucks Area Vocational Technical Sch., 972 F.2d

1364, 1377 (3d Cir. 1992); Rose v. Bartle, 871 F.2d 331, 366 (3d Cir. 1989); Durre v. Dempsey,

869 F.2d 543, 545 (10th Cir. 1989).  The Court of Appeals for the Third Circuit has noted that a

civil rights conspiracy claim is sufficiently alleged if the complaint details the following: (1) the

specific conduct that violated the plaintiff's rights, (2) the time and the place of the conduct, and

(3) the identity of the officials responsible for the conduct.  Oatess v. Sobolevitch, 914 F.2d 428,

431 n.8 (3d Cir. 1990).

A plaintiff must allege conspiracy with particularity even though a heightened pleading

standard generally does not apply to civil rights actions.  Bieros v. Nicola, 860 F. Supp. 223, 225

(E.D. Pa. 1994) (citing Leatherman, 507 U.S. at 168).  A complaint alleging a conspiracy must

make "factual allegations of combination, agreement, or understanding among all or between any

of the defendants [or coconspirators] to plot, plan, or conspire to carry out the alleged chain of

events."  Spencer v. Steinman, 968 F. Supp. 1011, 1020 (E.D. Pa. 1997).  See also Loftus v. Se.

Pa. Transp. Auth., 843 F. Supp. 981, 987 (E.D. Pa. 1994) ("[w]hile the pleading standard under [Fed.R.Civ.Proc.] Rule 8 is a liberal one, mere incantation of the words 'conspiracy' or 'acted in concert' does not talismanically satisfy the Rule's requirements").

The essence of a conspiracy is an agreement or concerted action between individuals. See D.R. by L.R., 972 F.2d at 1377; Durre, 869 F.2d at 545.  A plaintiff must therefore allege with particularity and present material facts which show that the purported conspirators reached some understanding or agreement or plotted, planned and conspired together to deprive a plaintiff of a protected federal right.  See D.R. by L.R., 972 F.2d at 1377; Rose, 871 F.2d at 366. Where a civil rights conspiracy is alleged, there must be specific facts in the complaint which tend to show a meeting of the minds and some type of concerted activity.  Deck v. Leftridge, 771 F.2d 1168, 1170 (8th Cir. 1985).  A plaintiff cannot rely on subjective suspicions and unsupported speculation.  Young v. Kann, 926 F.2d 1396, 1405 n.16 (3d Cir. 1991)).

Additionally, as Section 1983 does not create a cause of action for conspiracy in and of itself, a plaintiff must also allege some underlying deprivation of a constitutional right.  Davis v. Wilson, No. 08-589, 2009 WL 688912, at *12 (W.D. Pa. Mar 12, 2009) (Hay, Mag. J.) (quoting Holt Cargo Systems, Inc. v. Delaware River Port Auth., 20 F. Supp. 2d 803, 843 (E.D. Pa. 1998)); see also Hickson v. Marina Assoc.s, 743 F. Supp. 2d 362, 377 n.22 (D.N.J. 2010) ("[t]he theory of conspiracy does not yield an independent cause of action under Section 1983, but instead presents merely a means to impute liability to other wrongdoers for violations of federal rights").

In the case *sub judice*, it is clear that Plaintiff has failed to allege sufficient facts, with sufficient particularity, to state a plausible claim for relief under the theory of Section 1983 conspiracy against Defendant Sobina.  Specifically, there is no indication in the complaint that

Defendant Sobina had a meeting of the minds with anyone to transfer Plaintiff in order to violate his civil rights. Conclusory statements, such as Defendant Sobina "[c]onspired to violate [P]laintiff's civil rights[,]" <u>see</u> (Doc. 3 at 40), simply are insufficient to impute liability onto Defendant Sobina under Section 1983. The same is true regarding Defendant Burkhart's placement of Plaintiff in a hard cell. (Doc. 3 at 39). Additionally, given Plaintiff's failure to respond to Defendant's arguments against his conspiracy claims, <u>see generally</u> (Docs. 59-62) it is clear that leave to amend would be inequitable or futile, and dismissal will be with prejudice. <u>Cf. Arrango v. Winstead</u>, 352 F. App'x 664, 666 (3d Cir. 2009) (noting that the district court's refusal to grant leave to amend was proper given that no facts were alleged from which the court could infer that the plaintiff was denied a constitutional right, and plaintiff had failed to respond when this issue was raised in a motion to dismiss).

    2.   <u>Section 1985 and 1986 Conspiracy</u>

        To the extent that Plaintiff attempts to state a conspiracy claim under 42 U.S.C. §§ 1985(3) and 1986, he fails as a matter of law. In order to state a claim for conspiracy under Section 1985(3), Plaintiff must allege facts supporting the conclusion that (1) Defendants engaged in a conspiracy; (2) the conspiracy's purpose was to deprive a person or class of persons of equal protection of the laws or equal privileges and immunities under the law; (3) Defendants committed an act in furtherance of the conspiracy; and (4) Defendants' actions resulted in injury to the plaintiff. <u>See</u> <u>Faber v. City of Patterson</u>, 440 F.3d 131, 134 (3d Cir. 2006). A conspiracy based on Section 1985 must be based on some sort of invidious discriminatory animus, such as racial or class-based animus. <u>Griffin v. Breckenridge</u>, 403 U.S. 88, 102 (1971).

Plaintiff fails to state a claim for conspiracy under Section 1985 for two reasons.  First, he has failed to allege sufficient facts to state a plausible claim that a civil conspiracy existed.  <u>See</u> Part III.C.1, <u>supra</u>.  Second, Plaintiff does not allege any actionable form of "invidious discriminatory animus" in his amended complaint.  Furthermore, to the extent that Plaintiff alleges that Defendants' alleged bad acts were based on Plaintiff's status as a prisoner, he still fails to satisfy this requirement, as it is well established that prisoners are not a protected class. <u>Abdul-Akbar v. McKelvie</u>, 239 F.3d 307, 317 (3d Cir. 2001).   Additionally, to the extent that Plaintiff attempts to state a claim under Section 1986, he fails because, in order for liability under Section 1986 to attach, an underlying violation of Section 1985 must have been committed.  <u>See</u> 42 U.S.C. § 1986; <u>see also</u> <u>Dorsey v. Daub</u>, No. 09-CV-3879, 2011 WL 322887, at *6 (E.D. Pa. Feb. 2, 2011).   Accordingly, these claims, to the extent that Plaintiff attempts to make them, will be dismissed.  Furthermore, as it is apparent that leave to amend would be both inequitable and futile, dismissal will be with prejudice.

### D.  **Defendant Steel**

In order to state a claim under 42 U.S.C. § 1983, a plaintiff must meet two threshold requirements: first, the alleged misconduct giving rise to the cause of action must have been committed by a person acting under color of state law; and second, the defendants' conduct must have deprived the plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States.  <u>Parratt v. Taylor</u>, 451 U.S. 527, 535 (1981) (<u>overruled in part on other grounds by</u> <u>Daniels v. Williams</u>, 474 U.S. 327, 330-331 (1986)).

Plaintiff's alleges that Defendant Steel violated DOC policy by failing to discern whether his television was in working order.  (Doc 3 ¶¶ 3-5).  Such allegations do not raise claims of

constitutional significance, and thus are not cognizable under Section 1983.  See, e.g., McMullen v. Maple Shade Twp., 643 F.3d 96, 99 (3d Cir. 2011).  "'In a suit under § 1983 the plaintiff must show a violation of the Constitution or laws of the United States, not just a violation of state law. The two are not the same.'"  Brown v. Dep't of Corr., No. 05-347, 2007 WL 4322980 at *6 (W.D. Pa. Aug. 29, 2007) (Hay, Mag. J) (adopted by Brown v. Beard, No. 2:05cv347, 2007 WL 3274145, at *1 (W.D. Pa. Nov. 5, 2007) (Cercone, J.)) (quoting Gramenos v. Jewel Companies, Inc., 797 F.2d 432, 434 (7th Cir. 1986)).  See also Phillips v. Norris, 320 F.3d 844, 847 (8th Cir. 2003) ("there is no federal constitutional liberty interest in having state officers follow state law or prison officials follow prison regulations").

To the extent that Plaintiff is attempting to assert that Defendant Steel is himself somehow liable for the destruction of his television, such a claim would arise under the Due Process Clause of the Fourteenth Amendment.  However, this claim necessarily fails "if a meaningful post-deprivation remedy is available for the loss."  Hudson, 468 U.S. at 533.  The Court of Appeals for the Third Circuit has held that the Pennsylvania Department of Corrections' grievance procedure (which Plaintiff admits he pursued, although unsuccessfully, see (Doc. 3 ¶ 9)) "provides an adequate post-deprivation remedy" for prisoners making claims for damage to or loss of personal property.  Durham v. Dep't of Corr, 173 F. App'x 154, 157 (3d Cir. 2006). Therefore, Plaintiff's such a claim, to the extent that Plaintiff attempts to assert it, must be dismissed.  Furthermore, given Plaintiff's factual allegations, it appears that granting leave to amend the complaint would be futile and, as such, dismissal will be with prejudice.

It also appears that Plaintiff may be attempting to state a claim against Defendant Steel based on his denial of grievance number 173214 regarding the damage to Plaintiff's television

set.[7]  (Doc. 3 ¶¶ 10-13).  However, it has been well established that prisoners do not have a

constitutional right to prison grievance procedures.  See, e.g., Heleva v. Kramer, 214 F. App'x

244, 247 (3d Cir. 2007) (citing Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001) (collecting

cases)).  Additionally, it is clear from Plaintiff's factual allegations that he was not precluded

from filing institutional grievances, or from pursuing them to completion.  Accordingly,

Plaintiff's claims based on Defendant Steel's handling of Plaintiff's grievances will be

dismissed.[8]  As any amendment would be futile, dismissal will be with prejudice.


E.  **Plaintiff's Motion for Summary Judgment**

Plaintiff has filed what he has styled as a counter motion for summary judgment.  (Doc.

59).  However, a reading of this "motion," as well as its supporting brief (Doc. 56), demonstrates

that these filings properly would be characterized as responses in opposition to Defendants'

summary judgment motion.  To the extent that Plaintiff seeks summary judgment in his own

right, for the reasons stated above, it is clear that genuine issues of fact remain with respect to his

claims which survive Defendants' motion for summary judgment, which would render summary

judgment in Plaintiff's favor inappropriate.  Accordingly, Plaintiff's motion for summary

judgment will be denied.

---

[7] The wording of the claims in the complaint indicates that Plaintiff may be attempting to state a claim against Defendant Steel for making verbal threats in response to the filing of grievances as well.  (Doc. 3 at 41).  However, as Plaintiff makes no underlying factual allegations regarding any verbal threat being made by Defendant Steel, this Court will interpret this claim to be directed at Defendant Steel's involvement in the grievance process itself.  Out of caution, the undersigned notes that mere verbal threats do not give rise to a cause of action under Section 1983.  See Jacobs v. Bayha, No. 07-237, 2010 WL 3895768, at *4 (W.D. Pa. Sept. 30, 2010) (Conti, J.) (collecting cases).

[8] This same logic would apply to any attempt by Plaintiff to raise claims against the other Defendants for their involvement in the grievance process.

An appropriate order will follow.


December 6, 2011                                   s/Cathy Bissoon_____
                                                  CATHY BISSOON
                                                  UNITED STATES DISTRICT JUDGE



cc:
**ERIC ROBINSON**
AM-6940
SCI at Huntingdon
1100 Pike Street
Huntingdon, PA 16654

(via ECF email notification):
All Counsel of Record